IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 21-CR-30156-DWD |
| | ) |
| RICKY PERRY, | ) |
| | ) |
| Defendant. | ) |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorneys, Steven D. Weinhoeft, United States Attorney for the Southern District of Illinois, and Luke J. Weissler, Assistant United States Attorney for said district, submits for the Court's consideration this Sentencing Memorandum.

**I.     INTRODUCTION**

On June 22, 2020, two people were shot outside the Greystone Apartments in the Village of Alorton, Illinois (Alorton).[1] Defendant Ricky Perry, a sworn police officer in Alorton, worked the overnight shift that evening. He was the only patrol officer on duty at the time. But Perry wasn't in the area patrolling when the shooting occurred. In fact, he wasn't even in Alorton. According to GPS data, Perry's patrol car was parked outside his house miles away in East St. Louis, Illinois, where it sat with the engine off for almost 7 hours during his shift. Perry left his house and responded

---

[1]  *See* Kelsi Anderson, 2 injured in shooting at apartment complex in Alorton, KSDK, June 23, 2020, available at https://www.ksdk.com/article/news/crime/double-shooting-alorton-apartments/63-45157e3e-09b2-4d03-a01a-47c407505acb (last visited Jan. 4, 2022).

to the Greystone Apartments around midnight. The next night, he spent over 11 hours of his 12-hour shift outside the jurisdiction at home.

For about three years, Perry falsified police timecards claiming that he spent thousands of hours on the clock patrolling the streets of Alorton when he was really outside the jurisdiction without any justification or approval, usually at home. Perry fraudulently collected over $60,000.00 for policework that he never performed. In doing so, Perry frequently left the people of Alorton – an impoverished town in a high crime area – without any police presence during overnight hours when they needed it the most. He also undermined the public's trust in the good work of police officers who serve the Metro East with integrity and dedication.

The Government recommends a split sentence of 5 months in prison and 5 months of home confinement. This sentence, at the low-end of Perry's sentencing guidelines range, will provide just punishment for his serious offense and general deterrence for other officers.

II. **OFFENSE CONDUCT**

In August 2017, Perry started as a patrol officer with the Alorton Police Department. *Id.* at ¶ 50. Alorton was a low-income community with a diminishing population in a high crime area. Stipulation of Facts (Doc. 8), at ¶ 3.[2] Perry's job duties as a sworn Alorton police officer included patrolling the jurisdiction and responding to police calls. PSR at ¶ 8.

Within his first six months, Perry began falsifying his timecards at the Alorton

---

[2] Alorton was incorporated into the new city of Cahokia Heights in May 2021.

Police Department. *Id.* at ¶ 6. He did this to hide the fact that he wasn't really patrolling the jurisdiction during his shifts. *Id.* In fact, nearly every shift that Perry claimed to be patrolling Alorton, he absconded from the jurisdiction without justification or approval. *Id.* at ¶ 12. According to GPS data, Perry usually went to his home in East St. Louis, Illinois – though he sometimes left his patrol car parked at home and went to a friend's house in another person's car. *Id. See also*, Exhibit 1, Report of Interview of Ricky Perry, at p. 1. This conduct violated multiple aspects of Perry's job duties and expectations of patrol officers. PSR at ¶¶ 9-10.

From May 2018 to April 2021, Perry spent about 4,000 hours on the clock as an Alorton patrol officer while outside the jurisdiction without justification or approval. *Id.* at ¶ 12. This equates to more than 25 hours every week for three straight years without even considering vacations or holidays. *Id.* The Alorton Police Department paid Perry $60,346.25 based on his misrepresentations. *Id.*

While on duty, Perry sometimes ignored dispatch calls from home. For example, on August 13, 2019, at 9:09pm, a dispatcher called Perry – the only patrol officer on duty – to have him investigate a triggered alarm. When Perry failed to respond, the dispatcher tried again at 9:26pm. Again, Perry failed to respond. Below is a screenshot of the dispatch logs from this incident. [3]

| Event Number | Date / Time | Unit | DSN | Vehicle | Disp | Status | Category | Activity Note |
|---|---|---|---|---|---|---|---|---|
| 2019-126363 | 8/13/2019 9:09 PM | 2070 | 2070 | | 487 | DISPATCHED | ALARM | DISPATCH UNIT |
| 2019-126363 | 8/13/2019 9:26 PM | 2070 | 2070 | | 487 | DISPATCHED | ALARM | DISPATCH UNIT |

---

[3] If Perry responded to these calls, the dispatch logs would note that he was "enroute to scene." The lack of any response indicates that Perry either ignored these calls entirely or responded that he was busy doing something else.

3

According to GPS data, Perry was at home during both of these calls. That night, Perry's patrol car was parked at his house in East St. Louis with the engine off for over 6 straight hours – from 8:45pm until 3:02am the next morning. Notably, Perry submitted and received overtime pay for this shift.[4]

Other times, Perry told dispatchers he was responding to an incident, but stayed at home instead. For example, on August 30, 2019, at 1:13am, Perry was dispatched to an incident involving a subject with weapons. Based on Perry's response, the dispatcher logged that he was "enroute to scene." At 3:04am, Perry responded the same way to a separate dispatch call for "shots fired." Below are screenshots of the dispatch logs from these incidents.

| Event Number | Date / Time | Unit | DSN | Vehicle | Disp | Status | Category | Activity Note |
|---|---|---|---|---|---|---|---|---|
| 2019-135051 | 8/30/2019 1:13 AM | 2070 | 2070 | | 489 | DISPATCHED | SUBJECT W/ WEAPONS | DISPATCH UNIT |
| 2019-135051 | 8/30/2019 1:13 AM | 2070 | 2070 | | 489 | ENROUTE | SUBJECT W/ WEAPONS | ENROUTE TO SCENE |
| 2019-135088 | 8/30/2019 3:04 AM | 2070 | 2070 | | 489 | DISPATCHED | SHOTS FIRED | DISPATCH UNIT |
| 2019-135088 | 8/30/2019 3:04 AM | 2070 | 2070 | | 489 | ENROUTE | SHOTS FIRED | ENROUTE TO SCENE |

Perry was at home before, during, and after these incidents. His patrol car sat outside his house with the engine off for almost 7 straight hours during this shift – from 9:37pm on August 29th until 4:29am on August 30th. The Alorton Police Department did not have any written reports from Perry about either incident.

---

[4] This information comes from a summary spreadsheet created by federal agents after analyzing Perry's timecards, GPS data from his patrol car, and other police records. The spreadsheet has over 5,000 rows and provides the basis for the loss and restitution amount. The agents conservatively did not include Perry's travel time to and from his home and other locations in their summary.

4

Similarly, on April 8, 2020, at 9:22pm, Perry was dispatched for a theft and responded that he was "enroute to scene." After Perry failed to show up, he was dispatched again for the same incident at 9:36pm. Perry failed to respond. Below are screenshots of the dispatch logs from this incident.

| Event Number | Date / Time | Unit | DSN | Vehicle | Disp | Status | Category | Activity Note |
|---|---|---|---|---|---|---|---|---|
| 2020-50182 | 4/8/2020 9:22 PM | 2070 | 2070 | | 489 | DISPATCHED | THEFT | DISPATCH UNIT |
| 2020-50182 | 4/8/2020 9:22 PM | 2070 | 2070 | | 489 | ENROUTE | THEFT | ENROUTE TO SCENE |
| 2020-50182 | 4/8/2020 9:36 PM | 2070 | 2070 | | 509 | DISPATCHED | THEFT | DISPATCH UNIT |

Perry never left his house during this incident. That night, his patrol car was parked at his home for almost 10 straight hours – starting at 7:41pm on April 8th until 5:06am on April 9th.

When Perry did respond to dispatch calls in Alorton, he almost always left the jurisdiction and returned home immediately after. The timecards from the Alorton Police Department show that Perry was the only patrol officer on duty during most of his overnight shifts.

### III.   APPLICATION OF RELEVANT § 3553 SENTENCING FACTORS

**(1)   The need for the sentence imposed to reflect the seriousness of the offense and provide just punishment**

Perry's offense conduct is much more serious than the monetary loss to Alorton. He put a high crime community at risk and undermined the credibility of good police officers serving the Metro East.

On a local level, police presence is important as a deterrent to crime. Perry knew this. He grew up in a high crime area. He also previously worked as a homicide detective. He should understand how crime negatively impacts communities as much

5

as anyone. Nevertheless, Perry abandoned his post in Alorton during every shift for nearly three years. He spent thousands of hours at home and sometimes even ditched his patrol car and went to a friend's house. His conduct left families in a high crime area without an officer patrolling their streets and seconds away from responding to their emergencies. His conduct has now left them to wonder whether his presence could have prevented some of the violence, drug crimes, and property damage that plagued their community while Perry sat (or slept) at home.

On a larger scale, Perry's conduct damaged the perception of law enforcement in the Metro East – where we need good officers to serve. Police officers are accorded public trust to protect and enforce the law. That trust is vital in forming a partnership between communities and law enforcement that helps keep our neighborhoods safe. Part of that trust is the public's expectation that police officers will uphold their oaths and not violate the laws they are charged with enforcing. In this case, Perry betrayed that trust and disregarded his oath as an officer. This was not a single poor choice made in a momentary lapse of judgment. Perry spent nearly three years and 4,000 hours defrauding the people of Alorton. His conduct reinforced an unfortunate narrative in some communities that police officers do not have the public's best interest in mind and are not worth calling in an emergency. Once lost, the public's trust is hard to regain.

Perry's sentence needs to reflect the seriousness of his offense conduct and help restore the public's confidence by demonstrating that police officers who break the law while failing to protect and serve will be justly punished. The Government

6

submits that a sentence must include a short term of imprisonment to accomplish these objectives.

### (2) The need for the sentence imposed to afford adequate deterrence of criminal conduct

While admittedly difficult to measure, the need for general deterrence is an important factor in this case. Police officers are aware when a local member of law enforcement is sentenced to prison. This is never done lightly and makes headlines. When it happens, the sentence sends a deterring message that a particular offense conduct will not be tolerated in this district. Unlike other types of crime, general deterrence in this area can be effective through significant penalties. *See United States v. Thorpe*, No. 17-CR-40062-SMY, 2018 WL 5322352, at *5 (S.D. Ill. Oct. 29, 2018) ("Unlike some criminal justice issues, the crime of public corruption can be deterred by significant penalties that hold all offenders properly accountable.") (citing *United States v. Spano*, 411 F. Supp. 2d 923, 940 (N.D. Ill.), aff'd, 447 F.3d 517 (7th Cir. 2006)).

Perry's particular offense conduct needs adequate deterrence, particularly in the Metro East. Jay Cobb, another former Alorton police officer, is currently charged with the same offense. *See* Case No. 3:21-cr-30157-NJR (Doc 1). Mario Fennoy, a former police officer in East St. Louis, Illinois, was sentenced in this district for a very similar offense in June 2020. *See* Case No. 3:19-cr-30095-NJR (Doc. 41).[5] In this case,

---

[5] While Perry may note that Fennoy received three years of probation in his case, Fennoy's sentence involved a balancing of circumstances that are similar but not exactly the same as the present case, including a lower loss amount. Because Fennoy's probationary sentence was within his lower guidelines lower range, a short term of imprisonment within Perry's guidelines range will not pose an unwarranted sentencing disparity. *See United States v. Ferguson*, 831 F.3d 850, 853 (7th Cir. 2016)

7

Perry's sentence needs to reinforce positive law enforcement efforts while strongly encouraging corrupt police officers to find other career paths before they face the same serious consequences. The Government submits that a sentence of straight probation would be inadequate.

## IV.  CONCLUSION

Perry came from humble beginnings. His ability to navigate through that environment to eventually start a career in law enforcement is certainly commendable and mitigating. But these circumstances do not excuse his serious offense conduct in this case or lessen the need for just punishment and general deterrence. For the foregoing reasons, the United States respectfully recommends that this Court sentence Defendant Ricky Perry to 5 months in prison and 5 months of home confinement.

Respectfully submitted,

STEVEN D. WEINHOEFT
United States Attorney

s/ *Luke J. Weissler*
LUKE J. WEISSLER
Assistant United States Attorney
Nine Executive Drive
Fairview Heights, IL  62208
luke.weissler@usdoj.gov
(618) 628-3700
Fax:  (618) 628-3730

---

("The guidelines were intended to reduce unjustified sentencing disparities, so that similar crimes by similar defendants would result in similar sentences.").

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 21-CR-30156-DWD ) |
| RICKY PERRY, | ) ) ) |
| Defendant. | ) |

## Certificate of Service

I hereby certify that on January 12, 2022, I caused to be electronically filed the foregoing "Government's Sentencing Memorandum" to be filed with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to all attorneys of record.

Respectfully submitted,

STEVEN D. WEINHOEFT
United States Attorney

s/ *Luke J. Weissler*
LUKE J. WEISSLER
Assistant United States Attorney
Nine Executive Drive
Fairview Heights, IL  62208
luke.weissler@usdoj.gov
(618) 628-3700
Fax:  (618) 628-3730